UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **Disability Rights Louisiana** | NO: 3:25-CV-00821 |
| **VERSUS** | |
| **William "Beau" Clark, M.D. in his Official capacity as Coroner for East Baton Rouge Parish** | **MAGISTRATE JUDGE: SCOTT D. JOHNSON** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FRCP 12(b) (6)**</u>

**MAY IT PLEASE THE COURT:**

Defendant, Dr. William "Beau" Clark, East Baton Rouge Parish Coroner, in his Official Capacity (herein referred to as "Dr. Clark" and/or "Coroner"), files this Motion to Dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Further, the Plaintiff has no standing to bring this Complaint. Based upon the pleadings filed in this case, this Motion should be granted and Plaintiff's claims against Mover should be dismissed, with prejudice, as set forth more fully in this memorandum.

I. **PRELIMINARY STATEMENT**

Plaintiff, Disability Rights Louisiana, filed this Complaint seeking a declaratory judgment and injunction regarding the failure to produce alleged records of Dr. Clark. For the reasons set forth below, Plaintiff's Complaint should be dismissed, with prejudice, because Plaintiff lacks standing and Plaintiff fails to state a claim upon which relief can be granted.

1

II. **LAW AND ARGUMENT**

    **A. Plaintiff has no standing to bring this action.**

"It has long been settled that an organization has standing to sue to redress injuries suffered by its members without a showing of injury to the association itself and without a statute explicitly permitting associational standing. In *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), the Supreme Court first explicitly recognized that "[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members." Id. at 511, 95 S.Ct. 2197. The Court stated that "[t]he association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." Id. "So long as this can be established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable ..., the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction.'"

Further, "In *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), the Supreme Court refined Warth 's requirements into a three-part test for associational standing. Under Hunt, "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'"

In *Doe v. Stincer*, 175 F.3d 879 (11th Cir. 1999), the plaintiff, a P&A, argued that they needed access to records because, "many Floridians who want to see their mental health records are denied access." The court concluded that, Plaintiff "cannot show that any of its clients suffered a concrete injury that is traceable to the challenged statute and could be redressed by a favorable decision in this action—as it must to establish standing under Hunt."

Such is the case here. Plaintiff contends that,

"DRLA has probable cause to believe that Defendant is issuing CECs in a manner that does not comply with the statutory requirements under Louisiana law. This may have resulted in individuals with mental illness being involuntarily detained illegally and against their will. Such potential illegal detentions may have caused injury to individuals with mental illness, including but not limited to immediate physical or psychological harm or long-term harm." (Doc. 1)

Plaintiff requested in its first letter, "access records kept by your office relating to individuals with disabilities, namely individuals with mental health diagnosis" (Doc. 1-4) and requested in its second letter "A registry (meaning a list) of each individual (patient) for whom a Coroner's Emergency Certificate ("CEC") was signed in East Baton Rouge Parish between January 1, 2024, and the present, including the date each CEC was signed, the name and title of the individual who signed each CEC, the location the CEC evaluation was made, and the location of the patient after the CEC was signed (if known)." (Doc. 1-5)

As is evident, Plaintiff, has not identified ANY (or alleged any) of its clients/individuals who they claim have been injured by Dr. Clark. In fact, the request from Plaintiff is so broad because they don't know who, or even if, any of its clients have been allegedly injured. They are simply attempting to abuse their alleged power and overreaching to go on a fishing expedition. They have not received a complaint from any individual that he/she has been abused or neglected by Dr. Clark. As Plaintiff has not alleged and cannot show that a specific individual (or individuals) was injured and that obtaining the alleged records could redress this injury, Plaintiff does not have standing under *Hunt* to bring this action.

Further, Plaintiff does not have a claim under 42 U.S.C.A. § 1983. Plaintiff is not a person and, as such, cannot have their rights violated under this statute. Plaintiff is not bringing this action

on behalf of an individual that they are helping whose rights have been deprived. Plaintiff is simply attempting to use § 1983 to attempt to pay for this frivolous action.

## B. Plaintiff has failed to state a claim upon which relief can be granted.

"Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to allege enough facts to state a claim to relief that is plausible on its face and fails to raise a right to relief above the speculative level."[1] "A legally sufficient complaint does not need to contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action."[2] In order to avoid dismissal, for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations.[3]

A complaint fails to state a claim on which relief may be granted when the plaintiff does not plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).[4] For purposes of this Motion to Dismiss, only, the allegations asserted in the Complaint will be treated as true. Nevertheless, even when doing so, it is clear that Plaintiff has failed to allege sufficient facts to state a claim upon which relief can be granted against the Dr. Clark.

Pursuant to 42 U.S.C.A. § 10801, PAIMI was enacted by Congress to protect "individuals with mental illness [who] are subject to neglect, including lack of treatment, adequate nutrition, clothing, health care, and adequate discharge planning." Dr. Clark's duties as Coroner do not include doing any of the above. Thus, the Complaint does not seek to further the purpose of PAIMI.

---

[1] *National Bi-Weekly Admin. Inc. v. Belo Corp.*, 512 F. 3d 137, 140 (5th Cir. 2007).
[2] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).
[3] *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 667 F. 2d 1045 (5th Cir. 1982).
[4] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).

4

Under 42 U.S.C.A. § 10805, PAIMI has authority to "pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in the State". Again, Dr. Clark does not provide care or treatment to anyone in his capacity as Coroner.

Under 42 U.S.C.A. § 10805, PAIMI has authority to "pursue administrative, legal, and other remedies on behalf of an individual who--

(i) was a individual with mental illness; and

(ii) is a resident of the State,

but only with respect to matters which occur within 90 days after the date of the discharge of such individual from a facility providing care or treatment." As noted above, Plaintiff has not identified any "individual with a mental illness" or satisfied the 90 days from discharge requirement. Further, the Coroner's office is not a "facility providing care," nor does Dr. Clark provide treatment in his capacity as Coroner.

Under 42 U.S.C.A. § 10805, Plaintiff may "have access to facilities in the State providing care or treatment." As indicated above, Dr. Clark and the Coroner's office do not provide care or treatment. Plaintiff has also not identified the individual or even the category of individual as required by Section 4 of 42 U.S.C.A. § 10805 nor has Plaintiff stated why the individual is unable to obtain his/her own records. Under 42 U.S.C.A. § 10802, PAIMI defines the term abuse as "any act or failure to act by an employee of a facility rendering care or treatment which was performed." Again, Dr. Clark and the Coroner's office do not provide care or treatment. Further, Plaintiff has not alleged how the issuance of an emergency certificate by a coroner could fall under this definition of abuse. If anything, an emergency certificate allows an individual to be further treated. How could this be defined as abuse or neglect? How would an individual be harmed by receiving

5

more treatment? The purpose and intent of PAIMI is to make sure individuals don't have a "lack of treatment."

Under 42 U.S.C.A. § 10802, PAIMI defines the term neglect as "a negligent act or omission by any individual responsible for providing services in a facility rendering care or treatment." The Coroner's office is not a "facility," and Dr. Clark and the Coroner's office do not render care or treatment.

Under 42 U.S.C.A. § 10802, PAIMI defines the term facility as "hospitals, nursing homes, community facilities for individuals with mental illness, board and care homes, homeless shelters, and jails and prisons". The Coroner's office is not enumerated as a facility in this definition. Moreover, the common thread in the list of facilities is that they provide care or treatment services to people with mental illness. The Coroner's office does not provide care or treatment and is not similar in any way with respect to the types of services offered or performed by the above "facilities." A coroner's office is not an entity PAIMI was intended to cover.

Likewise, in other relevant federal definitions pertaining individuals with mental illness, a coroner's office is not considered a "facility". Case, in point, under the requirements applicable to the protection and advocacy for individuals with mental illness program, 42 CFR § 51.2 defines facility as "any public or private residential setting that **provides overnight care** accompanied by **treatment services**. Facilities include, but are not limited to the following: general and psychiatric hospitals, nursing homes, board and care homes, community housing, juvenile detention facilities, homeless shelters, and jails and prisons…" Dr. Clark and the Coroner's office do not and cannot provide overnight care for individuals as that is not one of their duties under Louisiana law, they do not have facilities capable of providing overnight care, and they do not provide treatment services. Dr. Clark and the Coroner's office do not operate a mental health facility or treatment

facility for mentally ill individuals. By definition, Dr. Clark and his office do not fall within the scope of PAIMI.

Under 42 U.S.C.A. § 10802, PAIMI defines the term individual with mental illness to mean an individual "who is an inpatient or resident in a facility rendering care or treatment." Again, Dr. Clark and the Coroner's office do not provide such care or treatment.

Under 42 U.S.C.A. § 10806, PAIMI defines records to include "reports prepared by any staff of a facility rendering care and treatment or reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility that describe incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents, and discharge planning records." As mentioned above, a coroner's office is not a "facility," and Dr. Clark and the Coroner's office do not provide care or treatment. Dr. Clark and his employees are not staff of a "facility rendering care or treatment" as defined above.

The Constitution of the State of Louisiana states that, "In each parish a coroner shall be elected for a term of four years. He shall be a licensed physician and possess the other qualifications and perform the duties provided by law. **The requirement that he be a licensed physician shall be inapplicable in any parish in which no licensed physician will accept the office.**" Currently, there are 17 non-physician coroners in the state of Louisiana.

Louisiana Revised Statute 28:53G(1) states that:

Upon admission of any person by emergency certificate to a treatment facility, the director of the treatment facility shall immediately notify the coroner of the parish in which the treatment facility is located of the admission, giving the following information if known:

(a) The person's name.

(b) Address.

7

(c) Date of birth.

(d) Name of certifying physician, psychiatric mental health nurse practitioner, or psychologist.

(e) Date and time of admission.

(f) The name and address of the treatment facility.

(2)(a) Within seventy-two hours of admission, the person shall be independently examined by the coroner or his deputy who shall execute an emergency certificate, pursuant to Subsection B of this Section, which shall be a necessary precondition to the person's continued confinement.

According to Merriam-Webster, medical treatment is "the management and care of a patient to prevent, cure, ameliorate (improve), or slow the progression of a medical condition, including a specific therapeutic agent or procedure used for that purpose." The distinction between medical treatment and first aid are discussed in 30 CFR § 50.20-3:

> Medical treatment includes, but is not limited to, the suturing of any wound, treatment of fractures, application of a cast or other professional means of immobilizing an injured part of the body, treatment of infection arising out of an injury, treatment of bruise by the drainage of blood, surgical removal of dead or damaged skin (debridement), amputation or permanent loss of use of any part of the body, treatment of second and third degree burns. Procedures which are diagnostic in nature are not considered by themselves to constitute medical treatments. Visits to a physician, physical examinations, X-ray examinations, and hospitalization for observations, where no evidence of injury or illness is found and no medical treatment given, do not in themselves constitute medical treatment. Procedures which are preventive in nature also are not considered by themselves to constitute medical treatment. Tetanus and flu shots are considered preventative in nature. First aid includes any one-time treatment, and follow-up visit for the purpose of observation, of minor injuries such as, cuts, scratches, first degree burns and splinters. Ointments, salves, antiseptics, and dressings to minor injuries are considered to be first aid.

Louisiana Revised Statute 28:53(F) describes the purpose of an emergency certificate, in that it, "shall constitute legal authority to transport a patient to a treatment facility and shall permit the director of the treatment facility to detain the patient for diagnosis and treatment for a period not to exceed fifteen days and to return the patient to the facility if the patient is absent with or without permission during authorized periods of detention." The purpose of the emergency certificate law states very clearly that the certificate is only being executed to **give legal authority** to a **treatment facility** for that individual to obtain a **diagnosis or treatment**. The Coroner is saying to a treatment facility that they can detain an individual for diagnosis or treatment. Clearly then, the Coroner and his office are not a treatment facility, nor are they diagnosing or treating individuals, which is why they are sent somewhere else. If they were a treatment facility and could diagnose and treat individuals, they would not need to send them somewhere else, as required by law!

As the Court can see, Louisiana's Constitution allows for a coroner to not be a physician. As LA R.S. 28:53G(1) makes clear, "the person shall be independently examined by the coroner." Medical treatment is generally defined above and does not include examination, much less what is performed by a coroner when issuing an emergency certificate. An emergency certificate is the result of a determination by a coroner, not a diagnosis. Because this is the case, it is clear that the mandatory duty of a coroner to execute an emergency certificate cannot be inclusive of providing care and treatment as the coroner could be someone not qualified to be a doctor and not qualified to even perform any of the acts listed above. The execution of an emergency certificate by a coroner is nothing more than a required ministerial act. Further evidence of this fact is that coroners are not covered under medical malpractice because they do not practice medicine. This is why two emergency certificates must be issued to hold a person. The other being an emergency certificate executed by a physician or one of the allowed medical professionals listed in LA R.S. 28:53.

As this Court can see, this is a novel issue in Louisiana and to Defendant's knowledge, there are no cases in Louisiana that give an organization acting under PAIMI access to the records of a corner. The quintessential case, which dealt with the same issues herein is in *Disability Rts. Texas v. Pacillas.*[5] The Court's brethren in the 5th Circuit wrestled with the plaintiff's attempt to expand not only the authority granted under PAIMI, but also, the expansion of entities covered under PAIMI, the investigative authority under PAIMI and authority to access records under PAIMI. The court determined that congress did not intend for this broad expansion, nor was it the purpose and intent of PAIMI to cover facilities, actions and records outside of its scope. The court emphasized that "PAIMI does not provide limitless authority to investigate incidents of abuse and neglect occurring in the community."[6] In *Disability Rts. Texas v. Pacillas,* the plaintiff, a P&A, sought injunctive relief and declaratory judgment stemming from a police chief's denial of plaintiff's request for documents related to its investigation of incident involving police department's alleged abuse of its client who was experiencing a mental health crisis that purportedly violated PAIMI.[7] In that case, the "Court concluded that PAIMI's records-access provision does not independently authorize [plaintiff] to obtain the records from [the police] and that PAIMI does not allow [plaintiff] to obtain the records as part of its investigation of [the police's] alleged abuse.[8] The court found that the police department was not a facility under PAIMI and that the officers were not "employees or service providers of a facility that provides care or treatment to people with mental illness."[9] The court further concluded that the officers' evaluation of "a person for possible mental illness and whether they might be a danger to themselves or

---

[5] *Disability Rts. Texas v. Pacillas*, 690 F. Supp. 3d 654, 691 (W.D. Tex. 2023), appeal dismissed sub nom. Disability Rts. Texas v. Allen, No. 23-50704, 2023 WL 10675681 (5th Cir. Oct. 13, 2023)

[7] *Id.*
[8] *Id.* at 675.
[9] *Id.* At 684.

10

others…does not mean [ ] officers are employees or service providers of a facility providing care or treatment."[10] The court made it clear that, "evaluation and apprehension of a person with mental illness is not care or treatment."[11]

Dr. Clark and the Coroner's office role is the same as the officers in *Disability Rts. Texas* as he does not go beyond providing "non-medical evaluation meant to ensure an individual's due process is respected" and does not provide care or treatment as defined in PAIMI.

Simply put, it is plain to see that PAIMI does not apply to Dr. Clark or the Coroner's office. The office is not covered under the purpose and intent of PAIMI, and Plaintiff has no right or authority to the alleged records sought herein. If Plaintiff's real motive in filing this suit is to attempt a fishing expedition to try to gain ammunition to attack LA R.S. 28:53, their quarrel is with the legislature, not Dr. Clark, coroners all over the state of Louisiana, or this Court. Plaintiff is trying to expand its very limited power and authority without cause, justification, or legal support. As such, Plaintiff has no standing to bring this action, and no relief can be granted.

### C. An injunction and declaratory judgment are not warranted.

The courts have set forth four elements required to be proved to determine if a party is entitled to injunctive relief. "A party must prove four elements to be entitled to preliminary injunctive relief or a temporary restraining order: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury to the movant outweighs any harm that may result from the injunction to the non-movant; and (4) that the injunction will not disserve the public interest."[12]

---

[10] *Id.*
[11] *Id.*
[12] *Holmes v. BellSouth Telecommunications, LLC*, No. CV 23-0153, 2023 WL 5610359, at *2 (W.D. La. Aug. 29, 2023)

As discussed above, Dr. Clark believes that Plaintiff will not be successful on the merits of the case, but assuming they are, the other three elements are not met. Most importantly, the courts note that, "While the moving party must establish all four factors, a clear showing of irreparable harm "is the 'most essential' prior to issuance of a preliminary injunction."[13] First, Plaintiff has not identified an individual who would be harmed if they could not get these alleged records or what harm would occur. Next, Plaintiff asks for a "Registry." Dr. Clark and the Coroner's office do not keep a registry that could be provided even if Plaintiff were successful in this action. Moreover, Dr. Clark and his office execute over **EIGHT THOUSAND (8,000)** emergency certificates each year. Plaintiff's request would encompass almost **SIXTEEN THOUSOND (16,000)** emergency certificates by the time this matter is decided. Such creation of a "Registry" would be a monumental task costing the public an enormous amount of overtime work and costs for an office which is already woefully underfunded and understaffed. This extra work would also hamper Dr. Clark and his office's ability to perform its normal and critical services. This most assuredly would disserve the public and specifically the citizens of East Baton Rouge Parish. Most importantly, however, is the fact that while Dr. Clark and his office are not a treatment facility nor do they provide care or treatment to individuals, the hospitals, mental health facilities and such where the emergency certificates are executed **are** treatment facilities and provide care and treatment to individuals. These treatment facilities have the original emergency certificates, and are kept in the patients' files at the facilities and become a permanent part of their medical record. Plaintiff cannot claim that Dr. Clark and his office is their only, or even easiest, avenue of obtaining the alleged records they seek. Plaintiff has other adequate remedies to obtain what they allegedly want. These treatment facilities are, in fact, under the power and authority of PAIMI. This is further

---

[13] *Id.*

evidence as to why this entire exercise by Plaintiff is not only irrelevant and unnecessary, but it is reckless. It is reckless with this Court's time and the tax dollars of the citizens of East Baton Rouge Parish for having to defend such a frivolous action. Plaintiff has a duty to be a good steward of the funds allocated to it by the American people, and this suit is clearly a waste of those limited funds.

### D. Dr. Clark asserts qualified immunity and sovereign immunity.

Dr. Clark asserts his qualified immunity and sovereign immunity, and ask's this Court to dismiss this case based on said immunity. "Qualified immunity shields 'government officials performing discretionary functions' from civil liability for claims under federal law 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[14] "The qualified immunity defense affords government officials not just immunity from liability, but immunity from suit."[15] Plaintiff has failed to allege any right that has been violated or infringed by Dr. Clark in general, much less under color of law.

### E. Dr. Clark asserts immunity under LA R.S. 9:2798.1.

Pursuant to LA R.S. 9:2798.1, "Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." Dr. Clark asserts this immunity.

### F. Dr. Clark asserts immunity under LA R.S. 13:5713(I)(1).

Pursuant to LA R.S. 13:5713(I)(1), "Liability shall not be imposed on an elected coroner or his support staff based upon the exercise or performance or the failure to exercise or perform

---

[14] *Randle v. Lockwood*, 666 Fed. Appx. 333, 335 (5th Cir. 2016) (internal citations omitted).
[15] *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 525 26(1985)).

their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." Dr. Clark asserts this immunity.

Finally, Plaintiff seeks to recover attorneys' fees and costs pursuant to 42 U.S.C. §1988 and punitive damages under §1983. The court in the very cases cited by Plaintiff for the proposition that not only do they have a cause of action against Dr. Clark under §1983 and are entitled to attorneys' fees and costs ruled that, "neither the Ninth Circuit nor the Supreme Court have apparently addressed the issue. In the absence of controlling authority, and because [the plaintiff] is already entitled to relief under PAIMI, the Court here, like the Seventh Circuit, declines to further address [plaintiff's] ability to pursue relief under § 1983."[16] Further, it is well established that §1983 does not allow for recovery of punitive damages against a governmental agency.[17] Accordingly, Plaintiff cannot recover punitive damages, attorneys' fees, or costs, against Dr. Clark, and Plaintiff's claim against Dr. Clark for punitive damages, attorneys' fees, and costs should be dismissed.

### III. CONCLUSION

It is clear that Plaintiff has no standing to bring this suit and/or, alternatively, that Plaintiff has failed to state a claim upon which relief can be granted. PAIMI simply does not apply to Dr. Clark or his alleged records. As such, Plaintiff's request for a declaratory judgment and injunction should be denied as discussed above, and this matter should be dismissed, with prejudice, with all costs of this action being assessed to Plaintiff.

---

[16] *Matter of Disability Rts. Idaho Request for Ada Cnty. Coroner Recs. Relating to the Death of D.T.*, 168 F. Supp. 3d 1282, 1299 (D. Idaho 2016)
[17] *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 246, 271 (1981); *Pemberton v. West Feliciana Parish School Bd.*, 2010 WL 431572, at *7 (M.D. La. Feb. 3, 2010)

Respectfully Submitted By,

**HANNAH, COLVIN & PIPES, L.L.P.**
10626 Timberlake Drive
Baton Rouge, LA 70810
Telephone: (225) 766-8240
Facsimile: (225) 766-5546
wrpipes@hcpllp.com
baydell@hcpllp.com
bpino@hcpllp.com


  /s/ Blake A. Pino
W. Ransom Pipes (Bar No. 17748)
Blaine T. Aydell (Bar No. 34430)
Blake A. Pino (Bar No. 34712)
*Counsel for Defendant, Dr. William "Beau" Clark, M.D. in his official capacity as Coroner for East Baton Rouge Parish*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of October, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECT system which will send a notice of electronic filing upon counsel for all parties. Notice of this filing will be sent by operation of the court's electronic filing system to counsel of record.

  /s/ Blake A. Pino

15