UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DISABILITY RIGHTS LOUISIANA, | * | CIVIL ACTION NO.: 3:25-cv-00821-SDJ |
| | * | |
| Plaintiff, | * | JUDGE: UNDESIGNATED |
| | * | |
| | * | MAGISTRATE JUDGE: SCOTT D. JOHNSON |
| VS. | * | |
| | * | |
| | * | |
| WILLIAM "BEAU" CLARK, M.D., | * | |
| in his official capacity as | * | |
| Coroner for East Baton Rouge | * | |
| Parish, | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)**

# TABLE OF CONTENTS

I. THE ALLEGATIONS OF THE COMPLAINT. 1

II. LAW AND ARGUMENT 3

A. DRLA Need Only Plead Sufficient Facts to Allege a Plausible Basis for Relief. 3

B. Disability Rights Louisiana Has Standing to Sue Dr. Clark. 3

C. DRLA May Vindicate Its Rights Through Section 1983. 6

D. DRLA Has stated a Claim upon which Relief can be Granted. 6

E. The Coroner's Power to Involuntarily Commit Individuals for up to 15 Days Places Him Within DRLA's Investigatory Access Authority and Records Access Authority under PAIMI. 8
   1. Dr. Clark is violating DRLA's investigatory authority under PAIMI. 8
   2. Dr. Clark is violating DRLA's records access authority under PAIMI. 9
      a. *Pacillas* Is Distinguishable. 10

F. The East Baton Rouge Parish Coroner is Subject to PAIMI. 11
   1. Activity of Dr. Clark or His Deputies Has the Potential of Constituting "Abuse" or "Neglect" under the Definitions Set Forth in PAIMI. 13

G. Injunctive Relief Would Not Be Too Burdensome 14
   1. DRLA Is Willing to Inspect Records at Dr. Clark's Office to Minimize Burden on His Staff. 14
   2. Dr. Clark Concedes that DRLA Is Ultimately Entitled to Obtain the Requested Records. 15

H. The Court should reject Dr. Clark's immunity arguments. 16

III. CONCLUSION 17

## TABLE OF AUTHORITIES

**Cases**
*Advocacy Center v. Stalder.*, 128 F. Supp. 2d 358 (M.D. La. 1999) ............................................. 6, 7
*Argosy, Ltd. v. Hennigan,* 404 F.2d 14 (5th Cir. 1968) ....................................................................... 13
*Arizona Ctr. for Disability Law v. Allen*, 197 F.R.D. 689 (D. Ariz. 2000) ....................................... 2
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................................... 3
*Beary v. Centene Corp.*, No. CV 20-9-JWD-SDJ, 2021 WL 3074198 (M.D. La. July 2, 2021) (Johnson, Mag. J.) (internal citations omitted) ............................................................................. 3
*Connecticut Off. of Prot. & Advoc. For Persons With Disabilities v. Hartford Bd. of Educ.,* 464 F.3d 229 (2d Cir. 2006) .................................................................................................................. 14
*Disability Rights Texas v. Bishop*, 615 F. Supp. 3d 454 (N.D. Tex. 2022) .......................... 9, 10, 11
*Disability Rights Texas v. Pacillas,* 690 F. Supp. 3d 654 (W.D. Tex. 2023), *appeal dismissed sub nom*, *Disability Rts. Texas v. Allen*, No. 23-50704, 2023 WL 10675681 (5th Cir. Oct. 13, 2023) ............................................................................................................................................. 5, 12
*Disability Rts. Wisconsin, Inc. v. State of Wisconsin Dep't of Pub. Instruction,* 463 F.3d 719 (7th Cir. 2006) ......................................................................................................................................... 13
*Doe v. Stincer*, 175 F.3d 879 (11th Cir. 1999) ..................................................................................... 6
*Hunt v. Washington State Apple Advertising,* 432 U.S. 333 (1977) .................................................. 6
*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ................................................................................. 4
*Mi Familia Vota v. Ogg*, 105 F.4th 313 (5th Cir. 2024) ................................................................... 19
*Michigan Protection & Advocacy Service, Inc. v. Flint Community Schools*, 146 F. Supp. 3d 897 (E.D. Mich. 2015) .......................................................................................................................... 14
*Raj v. La. State Univ.*, 714 F.3d 322 (5th Cir. 2013) ........................................................................ 19

**Statutes**
42 C.F.R. § 51.2 .................................................................................................................................. 13
42 C.F.R. § 51.41 ................................................................................................................................ 11
42 U.S.C. § 10801 ......................................................................................................................... 1, 3, 8
42 U.S.C. § 10802 .............................................................................................................................. 13
42 U.S.C. § 10805 ......................................................................................................................... 8, 9, 11
42 U.S.C. § 10806 ........................................................................................................................ 13, 19
42 U.S.C. § 1983 ........................................................................................................................... 3, 6, 7
42 U.S.C. § 1988 .................................................................................................................................. 3
Louisiana Revised Statute 13:5704 .................................................................................................... 14
Louisiana Revised Statute 13:5704(A) ............................................................................................... 15
Louisiana Revised Statute 13:5713(I)(1) ............................................................................................ 18
Louisiana Revised Statute 28:53 .................................................................................................... 2, 14
Louisiana Revised Statute 9:2798.1 .................................................................................................... 18

**Rules**
Federal Rule of Civil Procedure 12(b)(6) ....................................................................................... 1, 17

Plaintiff Disability Rights Louisiana ("DRLA") submits this opposition to Defendant's Motion to Dismiss Pursuant to FRCP 12(b)(6), Rec. Doc. 7. DRLA filed its complaint in this case to enforce its right to inspect records of Dr. Clark, the coroner of East Baton Rouge Parish, arising from the involuntary commitment of men and women with mental illness. As the designated protection and advocacy agency for Louisiana, DRLA has a right to inspect those records in accordance with the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI"), 42 U.S.C. § 10801 *et seq*. Dr. Clark refuses to provide the records. He now argues DRLA lacks standing and that DRLA has no right under PAIMI to obtain them. As explained below, DRLA has standing to bring this claim and has stated a claim upon which relief can be granted. Dr. Clark's motion to dismiss should be denied.

**I.     The Allegations of the Complaint.**

DRLA filed its complaint on September 12, 2025. Rec. Doc. 1. As alleged in the complaint, DRLA is the designated protection and advocacy agency ("P&A") for Louisiana. *Id.* at ¶ 6. Congress created and funds P&A agencies to protect, advocate on behalf of, and empower all individuals with disabilities, including individuals with a mental illness. 42 U.S.C. § 10801(b); Rec. Doc. 1 at ¶¶ 5, 6. Under PAIMI, DRLA is charged to investigate allegations of abuse and neglect of persons with mental illness in facilities when it determines there is probable cause to do so. *Id.* at ¶ 9.

Defendant Dr. Beau Clark is the coroner for East Baton Rouge Parish. *Id.* at ¶ 7. Unique to Louisiana, the parish coroner is involved in the State's involuntary commitment of individuals with mental illness or are otherwise in need of acute mental health care because they are a danger to themselves or others at the time of evaluation. La. R.S. 28:53. If an individual is to be held involuntarily for longer than 72 hours, the parish coroner must execute a certificate that the person

1

being held continues to be a danger to themselves or others. *Id.* The coroner may designate a deputy to assist with this duty, however, any deputy must have the same qualifications as the coroner. La. R.S. 28:53(G)(2)(A). The certificate is referred to as a "Coroner's Emergency Certificate," or "CEC." Rec. Doc. 1 at ¶ 14; *see* La. R.S. 28:53. Following execution of a CEC, an individual with mental illness may be involuntarily held in an in-patient psychiatric facility for up to 15 days. Rec. Doc. 1 at ¶ 14.

In accordance with its statutory obligation to advocate for and protect persons with mental illness under PAIMI, and based on probable cause, DRLA began an investigation into whether Dr. Clark's subordinates are executing CECs in a manner that complies with the statutory requirements.[1]

For the purposes of that investigation, DRLA sought to inspect Dr. Clark's executed CEC records. DRLA sent a letter to Dr. Clark notifying him that DRLA intended to visit his office for an inspection. Rec. Doc. 1 at ¶ 17. An attorney representing Dr. Clark called DRLA in response and said that Dr. Clark would not give DRLA access to the requested records without a court order. *Id. at* ¶ 18. DRLA subsequently sent a second letter that narrowed its request to a list of CECs signed between January 1, 2024, and the present, including the date each CEC was signed, the name and title of the individual who signed each CEC, the location the CEC evaluation was made, and the location of the patient after the CEC was signed. *Id.* at ¶ 19. Counsel for Dr. Clark again responded by phone and stated that Dr. Clark would not disclose any records to DRLA. *Id.* at ¶ 20. Dr. Clark asserted, among other things, that he is not subject to the P&A acts and does not provide

---

[1] "It is by now a settled principle that the P&A is the "final arbiter of probable cause for the purpose of triggering its authority to access all records for an individual that may have been subject to abuse or neglect." *Arizona Ctr. for Disability Law v. Allen*, 197 F.R.D. 689, 693 (D. Ariz. 2000).

2

treatment. *Id.* at ¶ 20.  Dr. Clark did not provide a written statement of the reasons he denied DRLA access to the requested records. *Id.* at ¶ 20.

DRLA then filed its complaint. DRLA has alleged causes of action under 42 U.S.C. § 1983 and under PAIMI, 42 U.S.C. § 10801 *et seq*. Rec. Doc. 1 at pp. 7-8.  DRLA seeks a declaratory judgment that DRLA has authority under PAIMI to obtain the requested information, an injunction ordering the requested inspection or production, as well as attorney fees, costs, and expenses pursuant to 42 U.S.C. § 1988. *Id.* at ¶¶ 28-30.

## II. Law and Argument

### A. DRLA Need Only Plead Sufficient Facts to Allege a Plausible Basis for Relief.

When evaluating Dr. Clark's (12)(b)(6) motion, this Court should accept well-pleaded factual allegations in the complaint as true. Considering those well-pleaded allegations, the Court should then determine whether the alleged facts give plausible grounds for a claim that can be granted relief. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Beary v. Centene Corp*., No. CV 20-9-JWD-SDJ, 2021 WL 3074198, at *2 (M.D. La. July 2, 2021) (Johnson, Mag. J.) (internal citations omitted).

### B. Disability Rights Louisiana Has Standing to Sue Dr. Clark.

Dr. Clark's standing argument is unfounded because DRLA is not suing under associational standing, as he argues. DRLA is suing to enforce its own rights, arising under the statutory authority that Congress bestowed under PAIMI, and is seeking redress for Dr. Clark's denial to DRLA itself of the access to the requested records and information.

To establish Article III standing, a plaintiff must show: (1) it has "suffered an injury in fact;" (2) there is "a causal connection between the injury and the conduct complained of;" and (3)

3

it is "likely ... that the injury will be redressed by a favorable decision" from the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). DRLA's complaint sufficiently pleads these elements. Following the *Lujan* standard, DRLA's injury is Dr. Clark's denial of access to records that are subject to DRLA's inspection and access rights. Dr. Clark's refusal to provide the requested records or information causes injury to DRLA because it impairs DRLA's ability to fulfill its mandate to investigate allegations of abuse or neglect. Finally, a favorable judgment will provide DRLA with redress. DRLA has sought this Court to order declaratory relief by recognizing DRLA's authority to obtain the requested records and information, and injunctive relief by ordering Dr. Clark to provide the requested records and information.

Other courts have recognized the standing of P&A agencies to enforce their right to inspect records. For example, a P&A's Article III standing to seek declaratory and injunctive relief to obtain records was recently recognized by another district court within the Fifth Circuit in *Disability Rights Texas v. Pacillas,* 690 F. Supp. 3d 654 (W.D. Tex. 2023), *appeal dismissed sub nom*, *Disability Rts. Texas v. Allen*, No. 23-50704, 2023 WL 10675681 (5th Cir. Oct. 13, 2023). In *Pacillas,* Disability Rights Texas (DRTx) sued the El Paso Police Department for its denial of records regarding a violent arrest of one of DRTx's clients. *Id.* Addressing the issue of standing, the court explained:

> As discussed, Congress provided P&A systems, like DRTx, with several authorities, including the right to obtain certain records. 42 U.S.C. §§ 10805(a)(4), 10806, 15043(a)(2)(I), 15043(c); 29 U.S.C. § 794e(f)(2). In line with its putative records-access authority, DRTx requested records from EPPD regarding E.C.'s possible abuse and neglect. EPPD has refused to provide those records, which injures DRTx. *See Stalder*, 128 F. Supp. 2d at 363–64 (explaining that P&A Systems "ha[ve] standing to bring a lawsuit requesting records" and that if an entity denies the P&A system access to records related to "a claim it is investigating, it suffers a direct injury to its statutory interest"); cf. *Ala. Disabilities Advoc. Program v. SafetyNet Youthcare, Inc.*, 65 F. Supp. 3d 1312, 1322 (S.D. Ala. 2014) (noting, in a facility-access case, that the P&A system "ha[d] standing because it [sought]

4

to establish that [the defendant's] actions [were] causing injury to the P & A system itself").

*Id.* The Court here should reach a similar conclusion as to DRLA's standing.[2]

Similarly to DRTx, DRLA is suing Dr. Clark in DRLA's own capacity, not based on associational standing. Dr. Clark's motion does not address DRLA's standing to sue in its own right, not on behalf of its constituents. His entire standing argument is based on his allegation that DRLA does not have associational standing and thus, fails.

For the same reason, his reliance on *Hunt v. Washington State Apple Advertising,* 432 U.S. 333 (1977) and *Doe v. Stincer*, 175 F.3d 879 (11th Cir. 1999) is misplaced. In *Stincer,* the Florida P&A was denied access to mental health records it requested on behalf of Floridians. The P&A argued that it had associational standing on behalf of Floridians with disabilities to obtain records that individual Floridians were requesting. *Stincer* at 881. The plaintiff P&A in *Stincer* did not assert standing on its own behalf nor allege it had the authority to obtain the records on its own. Dr. Clark's reliance on *Stincer* is thus erroneous as the standing question is not the same here, as DRLA has asserted standing on its own to obtain the requested information and records. Dr. Clark further argues that because DRLA has not identified any clients who have been injured, it lacks standing. Rec. Doc 7 at p. 3. To the contrary DRLA itself is the party who has been harmed and there is no need to identify specific individuals with disabilities.[3]

e

---

[2] While Disability Rights Texas prevailed in its standing argument, as Defendants note in their memorandum, the *Pacillas* court ultimately determined that the agency did not have a right to access the requested records of the El Paso Police Department. *Pacillas* involved police records, not records of a parish coroner or medical professional, and the case is distinguishable. *See* discussion at pp. 11-12, *infra*.

[3] The court in *Stincer*, the very case that Dr. Clark relies on to buttress his standing argument, rejected that reasoning expressly. That court recognized that Protection and advocacy organizations may bring suit to enforce their own statutory rights and do not need to identify a specific individual or constituent to sue. 175 F.3d at 884.

5

### C. DRLA May Vindicate Its Rights Through Section 1983.

Finally, DRLA has the right to sue under 42 U.S.C. § 1983. Without citation to any authority, Dr. Clark argues that DRLA does not have a claim under 42 U.S.C. § 1983 because DRLA is "not a person, and, as such, cannot have their rights violated under this statute." *Id.* The Middle District of Louisiana rejected that argument in *Advocacy Center v. Stalder.*, 128 F. Supp. 2d 358, 360 (M.D. La. 1999). In *Stalder,* The Advocacy Center[4] sought medical records for an incarcerated client with mental illness in writing on two occasions. *Id* at 361. The defendants, a prison and its warden, refused to provide the records to The Advocacy Center. *Id.* The defendants unsuccessfully argued that The Advocacy Center could not collect attorney fees under 42 U.S.C. § 1983 when bringing a claim under PAIMI. *Id.* at 365-366. The Court held:

> The PAMII Act is in itself void of any express statement by Congress which forecloses § 1983 action. Neither does the PAMII Act contain any comprehensive remedial scheme by which this court could imply an intent to foreclose § 1983 action. Quite the contrary, the PAMII Act, gives to an "eligible system" the right to pursue a legal remedy after the exhaustion of all available administrative remedies.

*Id* at 365.

DRLA's attempt to obtain records from Dr. Clark is strikingly similar to the *Stalder* case. Like in *Stalder,* DRLA sent Dr. Clark written requests for records. Rec. Doc. 1 at 5-7. Similarly to the defendants in *Stalder*, Dr. Clark stated that he would not provide the records without a court order. *Id.* Thus, like this Court previously recognized*,* DRLA has a right to obtain redress under Section 1983.

### D. DRLA Has Stated a Claim upon which Relief can be Granted.

Congress bestowed protection and advocacy agencies with investigatory authority and records access authority in order to protect individuals with mental illness from abuse and neglect

---

[4] In February of 2020, The Advocacy Center changed its name to Disability Rights Louisiana.

when they are receiving care or treatment. Dr. Clark's actions in issuing required CEC's to facilitate emergency hospital admissions falls within the scope of PAIMI because he is effectively functioning an extension of a facility since his certification is necessary for admission to the facility. As such, DRLA is entitled to inspect or receive the records and Dr. Clark is obligated to comply pursuant to the authority granted by PAIMI.

DRLA alleged probable cause to believe that Dr. Clark is issuing CECs in a manner that does not comply with the statutory requirements under Louisiana law. Rec. Doc. 1 at ¶ 15. Under PAIMI, Congress bestowed P&As like DRLA with authority to investigate allegations of abuse and neglect of persons with mental illness. 42 U.S.C. § 10805. Congress enacted PAIMI because it found that "individuals with mental illness are vulnerable to abuse and serious injury." 42 U.S.C § 10801. Congress expressly determined that "individuals with mental illness are subject to neglect, including lack of treatment, adequate nutrition, clothing, health care, and adequate discharge planning; and [s]tate systems for monitoring compliance with respect to the rights of individuals with mental illness vary widely and are frequently inadequate. 42 U.S.C. §10801(a)(3). The stated purposes of PAIMI are:

> (1) to ensure that the rights of individuals with mental illness are protected; and
> (2) to assist States to establish and operate a protection and advocacy system for individuals with mental illness which will–
> (A) protect and advocate the rights of such individuals through activities to ensure the enforcement of the Constitution and Federal and State statutes; and
> (B) investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred.

42 U.S.C. §10801(b). Congress defined the authority of P&As to investigate allegations of abuse and neglect, as well as bring lawsuits. Specifically, Congress stated:

> "A system established in a State under section 10803 of this title to protect and advocate the rights of individuals with mental illness shall–
> (1)    have the authority to–

(A) investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred;
(B) pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in the State . . ."

42 U.S.C. § 10805.

### E. The Coroner's Power to Involuntarily Commit Individuals for up to 15 Days Places Him Within DRLA's Investigatory Access Authority and Records Access Authority under PAIMI.

PAIMI bestows DRLA with both investigative access authority and records access authority, which are distinct from one another. 42 U.S.C. § 10805(a) (1) and (4). *See Disability Rights Texas v. Bishop*, 615 F. Supp. 3d 454, 462 (N.D. Tex. 2022). By denying DRLA access to the requested records, Dr. Clark is violating DRLA's investigative access authority and records access authority.

#### 1. Dr. Clark is violating DRLA's investigatory authority under PAIMI.

DRLA's investigatory authority is described in 42 U.S.C. §10805(a)(1)(A), stating PAIMI empowers the P&A to "investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred." DRLA has alleged probable cause to investigate under PAIMI, and by denying DRLA access to CEC records, Dr. Clark is preventing DRLA from carrying out its mandate to investigate incidents of abuse and neglect of individuals with mental illness.

Finally in *Disability Rts. Texas v. Bishop*, the North District of Texas held that P&As investigative authority is not limited to incidents that occur in therapeutic or investigatory settings. *See Disability Rts. Texas v. Bishop*, 615 F. Supp. 3d 454, 465–66 (N.D. Tex. 2022). Specifically,

8

the court held that to limit a P&A's record access to the care, treatment, or investigation into the abuse of a client would be "absurd" because:

> "Congress sought to empower P&A organizations to "investigate incidents of abuse and neglect of individuals with mental illness" generally and not only those incidents that are in a therapeutic or investigatory context. *See* § 10801(b)(2)(B). And given that abuse or neglect of individuals with mental illness can occur in many different settings, it is incredible that Congress would categorically exclude a broad range of non-therapeutic and non-investigatory conduct that constitutes abuse or neglect from a P&A organization's records-access authority. Such a result is clearly absurd and militates against adhering to Bishop's construction." *See generally Tex. Brine Co., LLC v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 486 (5th Cir. 2020) ("In statutory interpretation, an absurdity is not mere oddity. The absurdity bar is high, as it should be. The result must be preposterous, one that 'no reasonable person could intend.' ") (quoting Bryan A. Garner & Antonin Scalia, Reading Law: The Interpretation of Legal Texts 237 (2012)).

*Id.* In *Bishop*, the Court recognized that individuals with mental illness are vulnerable to neglect and abuse anywhere. *Id.* Therefore, it correctly read PAIMI to not limit P&A investigation and access to the therapeutic or investigative context. *Id.* Thus, even if this Court finds that the Coroner is not a therapeutic setting, DRLA still has records-access under PAIMI.

## 2. Dr. Clark is violating DRLA's records access authority under PAIMI.

Under its records access authority, "[DRLA has] access to **all** records of any individual . . . with respect to whom a complaint has been received by the system or with respect to whom as a result of monitoring or other activities (either of which result from a complaint or other evidence) there is probable cause to believe that such individual has been subject to abuse or neglect". 42 U.S.C. §10805(a)(4) (emphasis added). Federal regulations implementing PAIMI hold that P&A agencies may access records that shall include but are not limited to

> Information and individual records, ***obtained in the course of providing intake, assessment, evaluation, supportive and other services***, including medical records, financial records, and reports prepared or received by a member of the staff of a facility or program rendering care or treatment. This includes records stored or maintained in locations other than the facility or program as long as the system has obtained appropriate consent consistent with section 105(a)(4) of the Act.

9

42 C.F.R. §51.41(C)(1). (emphasis added)

Courts have favored a broad interpretation of applicable records subject to the records access authority under PAIMI. In *Disability Rights Texas v. Bishop*, the court found that "[T]he statutory definition [does not] require[] "records" to be limited to those exclusively produced as part of the care, treatment, or investigation into the abuse or neglect of a particular individual." *Disability Rts. Texas v. Bishop*, 615 F. Supp. 3d 454, 465 (N.D. Tex. 2022).

Applying these authorities, the Court should conclude that DRLA's records investigatory and records access authority under PAIMI extends to Dr. Clark's records. Dr. Clark's denial to inspect or obtain the requested records violates DRLA's access authority.

### a. *Pacillas* Is Distinguishable.

Dr. Clark relies on *Disability Rights Texas v. Pacillas*, where a federal court in Texas ultimately denied a P&A access to police records, to argue that PAIMI does not extend to his records. However, this case presents different facts that should lead to a different outcome. In *Pacillas,* Disability Rights Texas (DRTx) sued the El Paso Police Department for its denial of records regarding a violent arrest of one of DRTx's clients. 690 F. Supp. 3d 654, 670 (W.D. Tex. 2023), *appeal dismissed sub nom*, *Disability Rts. Texas v. Allen*, No. 23-50704, 2023 WL 10675681 (5th Cir. Oct. 13, 2023). The notion that Dr. Clark believes the role of the coroner is the same as the role of the police department undermines the statutory requirements for the coroner's office, particularly related to signing of CECs. Police are charged with merely transporting individuals to a facility to be evaluated and treated. Here, the coroner's office is charged with evaluating an individual to determine if the individual is a danger to themselves or others and in acute care in a mental health facility for up to 15 days is appropriate. [cite to the statute]. The coroner is responsible for signing an order that places an individual involuntarily into a mental

health treatment facility. The police department does not have that same responsibility or authority. Therefore, *Pacillas* is not the same set of facts and does not support Dr. Clark's argument, nor does it refute DRLA's position that standing is proper and Dr. Clark is subject to DRLA's authority.

### F. The East Baton Rouge Parish Coroner is Subject to PAIMI.

The primary argument put forth by Dr. Clark to deny access to DRLA is that the Coroner is not a "facility" subject to PAIMI statute. Rec. Doc. 7 at 5-7, 9, 12. In doing so, Dr. Clark attempts to shield his office, the only entity in East Baton Rouge Parish with the power to involuntarily commit individuals not charged with a crime to locked psychiatric facilities for up to fifteen days, from access to records by DRLA, the P&A agency for the state. In Dr. Clark's motion, he obfuscates that the listing of organizations that are contained definition of a "facility" under 42 U.S.C. § 10806 is non-exhaustive.

Rather, PAIMI itself defines a "facility" broadly. The statute expressly states, "The term "facilities" **may include, but need not be limited to**, hospitals, nursing homes, community facilities for individuals with mental illness, board and care homes, homeless shelters, and jails and prisons." 42 U.S.C. § 10802(3) (emphasis added). When a statute, or regulation, uses the word "including", the statute necessarily connotes that there are other categories of things that are encompassed within its scope but are not specifically enumerated. As the Fifth Circuit Court of Appeals has recognized, the word *includes* "conveys the conclusion that there are other items includable, though not specifically enumerated by the statutes." *Argosy, Ltd. v. Hennigan,* 404 F.2d 14, 20 (5th Cir. 1968).

Also, Dr. Clark's assertion that a "facility" under PAIMI must provide overnight care is incorrect. Rec. Doc. 7 at 6. In support of his argument Dr. Clark relies on the regulation, 42 C.F.R.

11

§ 51.2, but that regulation again use the word "includes." PAIMI itself defines "facilities" in 42 U.S.C. § 10802, and makes no reference to overnight facilities. Federal courts have so recognized because schools, which do not provide overnight care, can nonetheless be deemed "facilities" under PAIMI. *See Disability Rts. Wisconsin, Inc. v. State of Wisconsin Dep't of Pub. Instruction,* 463 F.3d 719 (7th Cir. 2006)*; Connecticut Off. of Prot. & Advoc. For Persons With Disabilities v. Hartford Bd. of Educ.,* 464 F.3d 229 (2d Cir. 2006); *see also Michigan Protection & Advocacy Service, Inc. v. Flint Community Schools*, 146 F. Supp. 3d 897 (E.D. Mich. 2015) (holding that a school district may be a facility). Thus, a facility need not provide overnight care to qualify under PAIMI.

To fully understand the scope and power of coroner offices in Louisiana, and why they are in fact facilities under PAIMI, it is worth exploring the process by which individuals are involuntarily committed to locked psychiatric facilities. La. R.S. 28:53 is the statute that governs involuntary commitment in Louisiana. The parish coroner or the coroner's deputy must execute a necessary precondition for the continued confinement of an individual beyond the 72-hours allowed by a physician's emergency certification (a "PEC") and authorizes the involuntary commitment of an individual for up to fifteen days. La. R.S. 28:53(G). Parish coroners are the only individuals in Louisiana who have the power to involuntarily commit individuals who have not been accused of a crime to locked psychiatric facilities for up to fifteen days, an act with serious consequences that Dr. Clark writes off as "ministerial." Rec. Doc. 7-1 at 9.

Under La. R.S. 13:5704, a parish coroner must be a physician licensed by the Louisiana State Board of Medical Examiners to practice medicine in Louisiana, which Dr. Clark is.[5] Dr. Clark and his office is a facility by the nature of the role it plays in the involuntary admission of

---

[5] The requirement is waived if there are no licensed physicians in the parish qualified to run for the office. La. R.S. 13:5704(A).

12

individuals to inpatient mental health care. Dr. Clark and his office function as an extension of the facility for which the individual is placed. When Dr. Clark, or his designee, signs a CEC ordering the involuntary placement of an individual into a facility for acute mental health care for up to 15 days, Dr. Clark is fulfilling a necessary component for admission to that facility. PAIMI defines an individual with mental illness as "an individual who has a significant mental illness or emotional impairment…who is in the process of being admitted to a facility rendering care or treatment, including persons being transported to such a facility." 42 C.F.R. §51.2. The mere fact that Dr. Clark is not directly employed by the facilities within East Baton Rouge Parish where individuals are admitted does not diminish his necessary role in the admission process for each facility. There is no other pathway for an individual to be involuntarily admitted for up to 15 days outside the CEC. Thus, Dr. Clark falls under the umbrella of a facility and the records created by the Coroner fall under the scope of PAIMI.

### 1. Activity of Dr. Clark or His Deputies Has the Potential of Constituting "Abuse" or "Neglect" under the Definitions Set Forth in PAIMI.

Dr. Clark fails to acknowledge that involuntarily committing an individual illegally–including by allowing non-doctors to sign CECs–falls under the definition of both abuse and neglect under PAIMI. The PAIMI statute defines the terms "abuse" and "neglect:"

> "The term "abuse" means any act or failure to act by an employee of a facility rendering care or treatment which was performed, or which was failed to be performed, knowingly, recklessly, or intentionally, and which caused, or may have caused, injury or death to an individual with mental illness, and includes acts such as--
> (A) the rape or sexual assault of an individual with mental illness;
> (B) the striking of an individual with mental illness;
> (C) the use of excessive force when placing an individual with mental illness in bodily restraints; and
> (D) the use of bodily or chemical restraints on an individual with mental illness which is not in compliance with Federal and State laws and regulations."

42 C.F.R. §51.2.

13

> "The term "neglect" means a negligent act or omission by any individual responsible for providing services in a facility rendering care or treatment which caused or may have caused injury or death to an individual with mental illness or which placed an individual with mental illness at risk of injury or death, and includes an act or omission such as the failure to establish or carry out an appropriate individual program plan or treatment plan for an individual with mental illness, the failure to provide adequate nutrition, clothing, or health care to an individual with mental illness, or the failure to provide a safe environment for an individual with mental illness, including the failure to maintain adequate numbers of appropriately trained staff."

42 C.F.R. §51.2

Dr. Clark argues that the issuance of an improper CEC by a coroner cannot be abuse or neglect because it is treatment, and treatment cannot harm an individual. *See* Rec. Doc. 7-1 at 5-6. The definitions for both abuse and neglect include injury to a person with mental illness. *Id.* Certainly, illegal commitment to an in-patient psychiatric facility causes injury to individuals with mental illness. An inappropriate placement at an in-patient psychiatric facility is damaging and traumatizing. In-patient psychiatric facilities are locked units where patients may not come and go as they please. Most lack outdoor spaces, internet access, and have restrictions on visitation and phone access. People in in-patient psychiatric units cannot care for their children or go to their jobs. While in-patient psychiatric units are appropriate for some people, an illegal placement there is tantamount to false imprisonment. Such an act qualifies as abuse and neglect under PAIMI.

### G. Injunctive Relief Would Not Be Too Burdensome

#### 1. DRLA Is Willing to Inspect Records at Dr. Clark's Office to Minimize Burden on His Staff.

Dr. Clark argues that DRLA is not entitled to injunctive relief with citation to the factors that courts consider for a preliminary injunction. Rec. Doc. 7-1 at 11-12. DRLA has not filed for a preliminary injunction in this case. However, in any event, Dr. Clark's primary argument is that permitting a records inspection or requiring Dr. Clark to create a registry would be too burdensome

14

for his office, considering that they are "underfunded and understaffed." *Id.* While his office's lack of resources is not a sufficient legal ground to defeat DRLA's statutory authority to access his records, DRLA is willing to work with Dr. Clark to facilitate DRLA's ability to review his records in a manner that minimizes the burdens on his office. For example, if Dr. Clark prefers, DRLA is amenable to inspecting records at Dr. Clark's office, which was DRLA's original request and should minimize the burden on his staff. If Dr. Clark does not maintain copies of the requested records, Dr. Clark should say so. If he does maintain copies, then DRLA is amenable to reviewing those records in a manner that minimizes any burdens on his office

Dr. Clark argues that his office executes over 8,000 emergency certificates a year. Rec. Doc. 7-1 at 12. While that fact is not properly before the Court on a Rule 12(b)(6) motion, which is based on the allegation of the complaint, that number of certificates suggests that thousands of people are being involuntarily committed to facilities in East Baton Rouge Parish each year. Rather than undermining DRLA's right to relief, this fact, if proven, shows the importance of DRLA's investigation, to ensure that individuals are being involuntarily committed in a manner that complies with the law.

    **2. Dr. Clark Concedes that DRLA Is Ultimately Entitled to Obtain the Requested Records.**

Moreover, Dr. Clark in fact concedes that DRLA would ultimately be able to obtain the records. He argues not that DRLA is not entitled to obtain the requested records, but that instead of getting the records from his office DRLA must go one-by-one to "the hospitals, mental health facilities, and such where the emergency certificates are executed…..These treatment facilities will have the original emergency certificates and are kept in the patients' files…." Rec. Doc. 7-1 at 12. Thus, the parties do not dispute that DRLA has a right to obtain the records at issue, the only issue thus appears to be the location. It makes little practical sense to require DRLA to travel to

15

multiple other facilities, when the requested records are presumably stored and available in Dr. Clark's office.

Finally, Dr. Clark attacks DRLA as "reckless" and claims the suit is "irrelevant and unnecessary" and "frivolous". Rec. Doc. 7-1 at pp. 12-13. The only "waste of . . . limited" (*id.*) here is Dr. Clark's decision to expend resources litigating this case and hiding the records of his office from the state protection-and-advocacy agency for people with disabilities. The case could be over quickly at no additional taxpayer expense if Dr. Clark made his records available for inspection.

**H. The Court should reject Dr. Clark's immunity arguments.**

Lastly, qualified and sovereign immunity do not apply in this case. DRLA is suing Dr. Clark in his official capacity as coroner of East Baton Rouge Parish only, not in his individual capacity. Rec. Doc. 1 at p. 3. Moreover, DRLA seeks only prospective declaratory and injunctive relief, not damages.

Dr. Clark's asserted state law immunities under La. R.S. 9:2798.1 and La. R.S. 13:5713(I)(1) fail because the State may not provide immunity from Section 1983 claims to local officials through state law. Indeed, PAIMI itself abrogates any state laws that may more narrowly restrict the right of P&A agencies to access records. *See* 42 U.S.C. §10806(b)(2)(C).

Lastly, while Dr. Clark asserts that DRLA is not entitled to punitive damages, Plaintiff has made no request for punitive damages. In fact, Plaintiff has only sought declaratory and injunctive relief, with attorney fees and costs as appropriate. While Dr. Clark cites a case in support of his assertion that punitive damages are not appropriate, he provides no support for his position that attorney fees are not appropriate. Rec. Doc. 7 at p. 14.

16

Dr. Clark is not immune to suit, under either qualified or sovereign immunity. First, Dr. Clark does not clearly identify any basis for immunity other than the two Louisiana state statutes he cites. Even if the Court were to construe his assertion as seeking sovereign immunity, under the *Ex parte Young* exception to sovereign immunity, a private party may bring "suits for injunctive or declaratory relief against individual state officials acting in violation of federal law." *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013). To establish that the *Ex parte Young* exception applies, three requirements must be met: "(1) [a] plaintiff must name individual state officials as defendants in their official capacities; (2) the plaintiff must allege an ongoing violation of federal law; and (3) the relief sought must be properly characterized as prospective." *Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024). DRLA meets these requirements: Dr. Clark is sued in his official capacity, DRLA has alleged an ongoing denial of its access to records in violation of PAIMI, and DRLA seeks prospective declaratory and injunctive relief. Dr. Clark is not immune.

## III. Conclusion

Disability Rights Louisiana ("DRLA") has its own standing to bring this claim, and DRLA has clearly stated a claim upon which relief can be granted. Thus, Dr. Clark's Motion to Dismiss Pursuant to FRCP 12(b)(6) should be denied.

Respectfully submitted this 27th day of October, 2025,

*/s/ Melanie Bray*
Melanie Bray, La. Bar No. 37049
J. Dalton Courson, La. Bar No. 28542
Jonathan Delman, La. Bar No. 40338
Disability Rights Louisiana
8325 Oak Street
New Orleans, LA 70118
504-208-4151
504-272-2531 (fax)
mbray@disabilityrightsla.org
dcourson@disabilityrightsla.org
jdelman@disabilityrightsla.org